# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RON MORRIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 15 C 2923 |
| | ) |
| BNSF RAILWAY COMPANY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Beginning in 2004, Ron Morris worked as a locomotive conductor for the BNSF Railway Company. BNSF fired Morris after an investigation determined that he had violated numerous safety rules during a single run in March 2013. Morris, who is African-American, brought this suit alleging that BNSF dismissed him because of his race and engaged in racial harassment in violation of Title VII and 42 U.S.C. section 1981. BNSF has moved for summary judgment.

### Background

On March 7, 2013, Morris worked as the conductor on a "key train" running between the Illinois cities of Savanna and Aurora. A key train carries toxic or hazardous materials and is subject to special handling rules, including speed restrictions. During the run, Morris sped through multiple restricted-speed areas in violation of BNSF's General Code of Operating Rules. He also failed to report these violations as required by the Rules.

BNSF discovered these violations several days later when it performed a review of the locomotive event recorder. In April, the company held a formal investigation hearing led by Division Trainmaster Brett Russell. Russell recommended charging Morris with six violations of the General Code of Operating rules and suspending him for thirty days, followed by a review period of thirty-six months.

Morris's supervisor, Scott Hendrickson, shared the investigation hearing transcript and Russell's recommendation with Andrea Smith, a member of BNSF's disciplinary committee. Smith recommended firing Morris, noting that his multiple violations during one run constituted a stand-alone dismissible violation under BNSF's Policy for Employee Performance Accountability. Morris was fired on April 30, 2013.

Morris, who was a member of the United Transportation Union, appealed his dismissal to a board of neutral arbitrators pursuant to the collective bargaining agreement between BNSF and the Union. After the arbitrators upheld his dismissal, he filed a complaint with the Illinois Department of Human Rights and the United States Equal Employment Opportunity Commission. The EEOC issued Morris a notice of right to sue in January 2015.

Morris brought this suit alleging that BNSF wrongfully discharged him in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. BNSF has moved for summary judgment.

**Discussion**

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Simpkins v. DuPage Hous. Auth.*, 893 F.3d 962, 964 (7th Cir. 2018). A

genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Dunn v. Menard, Inc.*, 880 F.3d 889, 905 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Id.*

**A.     BNSF's procedural objections**

Before resolving the merits of the motion, the Court must consider BNSF's objections to the evidence Morris cites in his opposition brief.  BNSF argues that because Morris did not properly disclose certain witnesses and similarly situated employees during discovery, he is prohibited from relying on those individuals as evidence to oppose summary judgment.

Federal Rule of Civil Procedure 26 requires each party to disclose all persons who are "likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses . . . ." Fed. R. Civ. P. 26(a)(1)(A)(i). If a party does not make the required disclosures, "the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  Though the trial court has "broad discretion" in determining whether to disallow the use of nondisclosed witnesses or information, it should consider four factors: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

3

BNSF objects that Morris failed to identify certain witnesses and comparators in his Rule 26(a)(1) disclosures. Only the identities of the comparators are necessary to decide the merits of the summary judgment motion, and therefore the Court need not decide at this time whether the alleged non-disclosure of other witnesses was substantially justified or harmless.

BNSF's objections to the undisclosed comparators are baseless in light of the procedural history of this case. After discovery had closed, Morris retained a new attorney who requested to reopen discovery for sixty days. The Court granted that motion in limited part, requiring BNSF to answer four of Morris's interrogatories and respond to a request to produce documents relating to fifteen possible comparators. Dkt. no. 140. Given the posture of the litigation, it was clear that Morris intended to rely on the fifteen comparators and the materials BNSF produced about them. BNSF cannot plausibly claim to be surprised that those comparators were then cited in Morris's opposition brief.

Nor is there significant prejudice to BNSF. It argues that it would have deposed the comparators if their identities had been disclosed earlier. But even if the lack of deposition testimony could impair BNSF's ability to present evidence at trial, it offers no reason to believe that the absence of that testimony is meaningfully prejudicial at the summary judgment stage—at which the Court is only assessing whether material factual disputes exist, not adjudicating them. There is similarly no indication of bad faith or willfulness on the part of Morris's attorney. The Court concludes that Morris's non-disclosure of the similarly situated employees in his Rule 26(a)(1) disclosures is harmless.

4

**B.     Morris's racial-harassment claim**

BNSF argues, and Morris does not contest, that Morris's racial-harassment claim is time-barred because he failed to file an EEOC charge within 300 days of the alleged unlawful practice. *See* 42 U.S.C. § 2000e-5(e)(1). Morris expressly waives this claim in his response brief. The Court concludes that BNSF is entitled to summary judgment on the racial-harassment claim.

**C.     Morris's discriminatory-discharge claim**

In cases alleging employment discrimination in violation of Title VII or 42 U.S.C. § 1981, the Seventh Circuit has eliminated the distinction between "direct" and "circumstantial" evidence and instead requires the trial court to consider "simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race . . . or other proscribed factor caused the discharge or other adverse employment action." *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). The decision in *Ortiz* did not disturb the Supreme Court's ruling in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), however, which provides a multi-step burden-shifting framework for deciding employment discrimination cases. *See Ortiz*, 834 F.3d at 766.

The *McDonnell Douglas* framework, also called the "indirect method" of proof, places an initial burden on the plaintiff to establish a prima facie case of discrimination. To do so, the plaintiff must set forth "evidence that (1) she is a member of a protected class, (2) her job performance met [the employer's] legitimate expectations, (3) she suffered an adverse employment action, and (4) another similarly situated individual who was not in the protected class was treated more favorably than the plaintiff." *McKinney v. Office of Sheriff of Whitley Cty.*, 866 F.3d 803, 807 (7th Cir. 2017) (internal

quotation marks omitted) (alteration in original).  If the plaintiff establishes a prima facie case, the defendant must rebut the presumption of discrimination by articulating a legitimate, nondiscriminatory reason for the employment decision.  *Id.*  The burden then shifts back to the plaintiff to show that the stated reason is pretextual, which permits "an inference of unlawful discrimination."  *Id.*

**1.     Prima facie case**

The parties dispute only elements two and four of the prima facie case:  whether Morris met BNSF's legitimate expectations and whether similarly situated individuals outside the protected class were treated more favorably than he was.  Morris may satisfy the latter requirement by introducing evidence that the defendant applied its legitimate expectations in a disparate manner.  *See Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 394 (7th Cir. 2010).  In this context, the "second and fourth prongs [of the prima facie case] merge—allowing plaintiffs to stave off summary judgment for the time being, and proceed to the pretext inquiry" by showing disparate application of the employer's legitimate expectations.  *Id.*  Because the parties agree that Morris violated multiple safety rules in a single trip, which would permit his discharge under the terms of BNSF's discipline policy, the relevant question is simply whether BNSF enforced that policy against similarly situated non-African-American employees in a disparate manner, such that a reasonable jury could infer an unlawful discriminatory motive.

To support a prima facie case of discrimination, the similarly situated employees must be "directly comparable" to the plaintiff "in all material respects."  *Raymond v. Ameritech Corp.*, 442 F.3d 660, 610 (7th Cir. 2006).  But they need not be identical in every conceivable way:  comparators are sufficiently similar so long as their differences

6

from the plaintiff are not "so significant that they render the comparison effectively useless." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012). Evaluating the comparators demands a "flexible, common-sense" inquiry into whether "there are enough common factors . . . to allow for a meaningful comparison." *Henry v. Jones*, 507 F.3d 556, 564 (7th Cir. 2007). A reasonable inference of racial discrimination does not require the comparator to be a "clone" of the plaintiff. *Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908, 916 (7th Cir. 2010). In a case involving disparate discipline, the conduct of the comparators must be of "comparable seriousness," and a "precise equivalence" is not required. *Coleman*, 667 F.3d at 835 (quoting *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283 n. 11 (1976)).

BNSF suggests highly specific and demanding criteria for the comparators, asserting that, like Morris, they must have committed six or more serious violations of the General Code of Operating Rules in a single run while operating a key train carrying hazardous materials under the supervision of Scott Hendrickson and must not have benefitted from alternative handling or waiver during the disciplinary process. Neither Seventh Circuit case law nor common sense justifies such exhaustive similarity.

BNSF is correct that as a general rule, the involvement of the same decisionmaker is required to support an inference of discrimination. *See Coleman*, 667 F.3d at 847; *Ellis v. United Parcel Serv.*, 523 F.3d 823, 826 (7th Cir. 2008); *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000). And because Morris testified in his deposition that Hendrickson was solely responsible for the allegedly discriminatory discharge, the comparators are relevant only to the extent that they constitute evidence of Hendrickson's racial bias. Although Morris also alleges that other

decisionmakers (specifically Andrea Smith) may have been motivated by racial animus in firing him, the record contains no evidence that Smith or anyone else supervised the comparators. For that reason, only employees supervised by Hendrickson offer a meaningful comparison.

The other requirements BNSF seeks to impose on Morris's proposed comparators are excessively specific, however. First, BNSF argues that the comparators must have committed six or more violations in a single trip. BNSF's own discipline policy does not support this limitation. It is a "Stand Alone Dismissible Violation[]" to commit multiple serious violations during a single tour of duty. Dkt. no. 151, Ex. 5 (Policy for Employee Performance Accountability). BNSF has provided no evidence to suggest that *six* violations is the relevant benchmark for enforcing this policy. The more lenient discipline of non-African-American employees who committed multiple violations offers a meaningful comparison from which a jury could reasonably infer racial discrimination, even though those comparators may have broken fewer than six rules. Morris may therefore support his prima facie case with comparators who committed multiple serious violations during a single tour of duty.

Second, BNSF insists that the comparators must have been operating so-called "key trains" that transport hazardous materials. Although employees operating key trains are subject to particular regulations under the General Code of Operating Rules, BNSF's discipline policy does not impose different or more severe sanctions for violating rules that are specific to key trains. Because there need not be a "precise equivalence" in rule violations, *Coleman*, 667 F.3d at 835, a comparator who committed a standalone fireable offense in the form of multiple rule violations in a single trip is sufficiently similar

8

regardless of whether the employee was operating a key train.

Third, BNSF suggests that comparators who benefitted from "waiver" or "alternative handling" are not similarly situated because Morris was not eligible for those forms of disciplinary reprieve. Under a Memorandum of Agreement between BNSF and the United Transportation Union, employees who accept responsibility for their violations (subject to some exceptions) are eligible for alternative handling, which is a non-punitive response to rule violations. Employees who accept responsibility may also benefit from waiving their right to a hearing. Supervisors have discretion in granting a waiver.

With respect to waiver and alternative handling, the parties disagree on two points: first, whether Morris was categorically ineligible for alternative handling given the particular rules he violated, and second, whether Morris's act of requesting alternative handling was itself an admission of responsibility. Morris points to an e-mail message from Brett Russell, a Division Trainmaster at BNSF, in which Russell noted that applying for alternative handling constitutes admitting responsibility, and states that "[i]n my mind this further proves that Mr. Morris is guilty of the violations." Dkt. no. 151, Def.'s Ex. 19 at 2. And though there is a factual dispute about whether Morris's violations were categorically excluded from the alternative handling procedures, there is no allegation that he was precluded from waiver. Construed in the light most favorable to the nonmoving party, this evidence supports the inference that in the eyes of the BNSF supervisors responsible for disciplining him, Morris was eligible for alternative handling and waiver. For that reason, a jury could reasonably conclude that similarly situated employees who received alternative handling or waiver are meaningfully similar

9

comparators.

In this case, Morris has met his burden by identifying similarly situated, non-African-American employees who committed multiple serious rule violations in a single run under Hendrickson's supervision. Three such employees are Michael Wyatt, Michael Parys, and Daniel Cutler, who each committed three violations in a single trip and were given waivers. Another relevant comparator is Brian Oliver, who committed seven violations in a single run and was punished with a 30-day suspension, allegedly under Scott Hendrickson's supervision. (BNSF alleges that Hendrickson was no longer the Superintendent of Operations when Oliver was disciplined in September 2013, but the record indicates only that Hendrickson was a supervisor "through 2013." Dkt. no. 153, Ex. 5 (Hendrickson Decl.).)

A reasonable jury could infer from these comparators that discriminatory animus motivated Morris's firing. Morris has therefore adequately established his prima facie case.

**2.  BNSF's legitimate, nondiscriminatory reason**

Under the *McDonnell Douglas* framework, BNSF must next articulate a legitimate, nondiscriminatory reason for Morris's termination. BNSF's proffered explanation is that "Morris committed multiple serious rule violations in a single trip, which constitutes a standalone dismissible violation." Def.'s Mem. in Supp. Mot. Summ. J. at 17. The explanation satisfies BNSF's "light" burden to produce a "mere articulation of the reason." *Pilditch v. Bd. of Educ. of City of Chicago*, 3 F.3d 1113, 1117 (7th Cir. 1993).

### 3. Morris's evidence of pretext

To survive summary judgment, Morris must offer evidence establishing that there is a genuine dispute about whether BNSF's reason is pretextual. *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 500 (7th Cir. 2017). Showing pretext requires evidence that the proffered reason is phony, not merely mistaken. *Owens v. Chicago Bd. of Educ.*, 867 F.3d 814, 815 (7th Cir. 2017). If the plaintiff uses indirect evidence to show that "the employer's reason is not credible or [is] factually baseless," he "also must provide evidence that supports that the real reason was discriminatory." *Stockwell v. City of Harvey*, 597 F.3d 895, 901-02 (7th. Cir. 2010).

### a. Comparator evidence

Comparator evidence is relevant to the inquiry into pretext. *Khowaja v. Sessions*, 893 F.3d 1010, 1015 (7th Cir. 2018); *Coleman*, 667 F.3d at 858 ("Where the plaintiff argues that an employer's discipline is meted out in an uneven manner, the similarly-situated inquiry dovetails with the pretext question."). In *Coleman*, the Seventh Circuit reversed a grant of summary judgment for the defendant and held that the plaintiff's evidence that similarly situated co-workers were not disciplined as harshly was relevant to show pretext. *Coleman*, 667 F.3d at 859. The court noted that evidence of "selective enforcement of a rule calls into question the veracity of the employer's explanation." *Id.* at 857 (internal quotation marks omitted).

Morris has introduced evidence of similarly situated employees from which a reasonable jury could find that BNSF's explanation for his firing is not credible. As discussed above, other employees who committed multiple rule violations in a single trip were given waivers, not fired. And the fact that at least one employee outside Morris's

11

protected class—Brian Oliver—committed *seven* rule violations in a single trip and was given only a thirty-day suspension supports a reasonable inference that BNSF's explanation for terminating Morris is disingenuous. And because the comparators are not African-American, the more lenient treatment they received is some evidence that Morris was fired because of his race.

### b. Evidence of eligibility for alternative handling and waiver

The evidence regarding BNSF's failure to give Morris alternative handling or waiver also supports a reasonable inference of pretext. Morris has provided evidence that there is a genuine dispute regarding whether he was eligible for those forms of disciplinary relief. As mentioned above, accepting responsibility triggers eligibility for alternative handling and waiver. Since BNSF employee Brett Russell wrote in an e-mail that he viewed Morris's request for alternative handling as an admission of responsibility, a reasonable jury could conclude that Morris was eligible for alternative handling or waiver under BNSF's disciplinary policies.

Even stronger evidence of pretext comes from what a reasonable jury could find were BNSF's shifting, unsubstantiated, and misleading characterizations of its own policy about whether Morris was categorically excluded from alternative handling due to the nature of his violations. The Seventh Circuit has held that shifting and inconsistent explanations are evidence of pretext. *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 577 (7th Cir. 2003); *Statler v. Wal-Mart Stores, Inc.*, 195 F.3d 285, 291 (7th Cir. 1999).

In its initial brief, BNSF asserts that Morris was categorically ineligible for alternative handling because he violated a "critical work practice" but also implies that he would have been eligible for alternative handling if he had accepted responsibility for

12

his actions. Def.'s Mem. in Supp. Mot. Summ. J. at 10-11 ("Like alternative handling, to receive a waiver, an employee must accept responsibility for the incident in question."). In its reply brief, BNSF reiterates its allegation about critical work practices, while also suggesting that in his response brief Morris admitted he was ineligible because he "committed a Class I offense." Def.'s Reply Supp. Mot. Summ. J. at 19.

Though it is true that employees are eligible for alternative handling only if they accept responsibility for their violations, the Court can find nothing in the Memorandum of Agreement or Morris's response brief that supports BNSF's argument that Morris's violations are categorically excluded. The Memorandum of Agreement lists seven categories of rule violations that are excluded from the alternative handling process, but none applies to Morris. Dkt. no. 151-24, Def.'s Ex. 24 (Mem. of Agreement). The phrase "critical work practice" does not appear anywhere in the document. *Id.* BNSF's fleeting reference to Morris's response brief is equally unsubstantiated, as it mischaracterizes his contentions and fails to articulate why they would make him ineligible.

These differing explanations for why Morris was not granted alternative handling or waiver are not merely semantic distinctions, but discrete and incompatible rationales that "permit an inference of mendacity." *Schuster*, 327 F.3d at 577. Together with the comparator evidence, they constitute sufficient evidence from which a reasonable jury could conclude that BNSF's explanation for his firing was phony and that the real motivation for his discharge was racial animus.

### 4. Morris's remaining evidence

Finally, because Morris has shown that there is a genuine dispute of material fact

under the *McDonnell Douglas* framework, the Court need not consider the admissibility or legal sufficiency of Morris's other evidence.

## Conclusion

For the foregoing reasons, the Court grants BNSF's motion for summary judgment [dkt. no. 149] with respect to Morris's claim of racial harassment. The Court denies the motion with respect to Morris's claim of discriminatory discharge. The case is set for a status hearing on October 10, 2018 at 9:30 a.m. to discuss the status of Morris's legal representation, set a trial date, and discuss the possibility of settlement.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: October 2, 2018