IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RON MORRIS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 15 CV 2923 |
| | ) | |
| v. | ) | |
| | ) | |
| BNSF RAILWAY COMPANY | ) | Honorable Matthew F. Kennelly |
| | ) | Magistrate Judge Sidney I. Schenkier |
| Defendants. | ) | |
| | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTIONS IN LIMINE**

Defendant BNSF Railway Company ("BNSF"), by its attorneys, LaPointe Law, P.C., for its response to Plaintiff's motions *in limine* states:

**PRELIMINARY STATEMENT**

The court may grant Plaintiff's motions *in limine* only if the evidence Defendant seeks to admit is "clearly inadmissible for any purpose." *Hawthorne Partners v. AT & T Techs., Inc*., 831 F.Supp. 1398, 1400 (N.D.Ill. 1993). Plaintiff bears the burden of establishing that Defendant's evidence is "clearly inadmissible." *Plair v. E.J. Brach & Sons, Inc., et al,* 864 F.Supp. 67, 69 (N.D.Ill. 1994). Evidence is relevant and admissible where it makes a particular fact or consequence more or less probable than it would be without the evidence. *Gage v. Metropolitan Water Reclamation Dist. of Greater Chicag*o, 365 F.Supp.2d 919, 930 (N.D.Ill. 2005), *citing* Fed.R.Evid. 401. "The relevance threshold is low as the evidence need only 'tend' to make the fact of consequence more probable..., thus requiring merely a rational connection between the evidence offered by the litigant and the fact of consequence the litigant intends to establish." *Id.* at 930-931, *citing Int'l Merger & Acquisition Consultants, Inc. v. Armac Enter., Inc.,* 531 F.2d 821, 823 (7th Cir. 1976).

The evidence BNSF seeks to admit meets this threshold. Because Plaintiff has not met his burden of establishing the unquestionable inadmissibility of the evidence, the Court should deny Plaintiff's Motions *in Limine* Nos. 1-4, 6-7, and 9-10.[1]

### DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION *IN LIMINE* NO. 1
(Exclude testimony of Andrea Smith)

Plaintiff moves to bar the trial testimony of Andrea Smith, Director of Labor Relations and member of the PEPA team, because BNSF did not disclose Smith in its Rule 26(a)(1) disclosures until January 23, 2019. There is no basis for the Court to bar Smith's testimony because Smith's involvement, her knowledge of BNSF's policies, her role in reviewing the investigation materials, and her role in recommending the dismissal of Morris and engineer Jerome Jones were well-established and well-known to Plaintiff. Fact discovery in this case lasted nearly *three years*. Not only did Morris know of Andrea Smith and her involvement in his termination throughout this time, in his own words, she "played a significant role in terminating my employment from BNSF." Dkt. No. 170-2, Morris Declaration ¶ 8.

First of all, in July 2016, BNSF served its initial response to Plaintiff's Requests for Production. In its production, BNSF included the email from Scott Hendrickson to Smith in which Hendrickson sought the PEPA team's recommendation for appropriate discipline of Jones and Morris, and the email from Smith to Hendrickson and Jason Jenkins (General Manager) in which Smith recommended that BNSF terminate both employees. (See Dkt. No. 151-19) These are critical to both parties' positions in this case. In fact, Plaintiff and BNSF have agreed that the email from Hendrickson to Smith, for example, will be shared with the jury, and Morris relied on Smith's email back to Hendrickson and Jenkins in his efforts to refute BNSF's material facts in his summary judgment briefing. See FPTO Joint Ex. 6 and Dkt. 151-19, Dkt. 171, ¶ 31.

---

[1] BNSF agrees to Plaintiff's Motions *in Limine* Nos. 5, 8, and 11-12.

Second, after his termination, Morris personally sought out Smith and called her at her office to question her about, among other things, the status of his arbitration proceeding. Morris admitted at his deposition to knowing of Smith, her role in his dismissal and to speaking to her following his termination. In discussing his April 30, 2013 termination letter, Morris testified:

> Q: Well, the letter is from Scott Hendrickson, correct?
> A: Yes, the letter is from Scott Hendrickson.
> Q: Do you know who had to approve the dismissal?
> A: Andrea Smith.
> Q: Who is Andrea Smith?
> A: The labor relations director.

Dkt.# 151-1, Pl. Depo. 161:20 – 162:4.

> Q: Do you know Andrea Smith?
> A: I spoke to her several times. I never seen her as far as I know.
> Q: Okay. Do you know if she is white or black?
> A: I know she is white.
> Q: How do you know that?
> A: She sounds white.

*Id.* at 162: 11-18

Third, as noted above, Morris stated in his Declaration in opposition to BNSF's motion for summary judgment, "Andrea Smith, Robert Della Pretra [sic], Donald Russell, and Labor Relations director Andrea Smith, all played a significant role in terminating my employment from BNSF." Dkt. No. 170-2, ¶ 8.

Andrea Smith also featured heavily in Plaintiff's briefing on summary judgment, in which Plaintiff argued "Morris identifies Andrea Smith and Scott Hendrickson as BNSF employees who discriminated against him" and "Morris believes that Robert Della Pretra [sic], Donald Russell, and Labor Relations Director Andrea Smith, all played a significant role in dismissing him." Dkt. No. 169 pp. 2; *see also Id*. pp. 12, 21; Dkt. No. 171, Response to BNSF's SOF No. 31, citing Smith's email to Hendrickson and Jason Jenkins recommending dismissal, Dkt. 151-19.

And, the Court noted Smith's role in Morris' termination and Morris's allegations against her in ruling on summary judgment, stating:

1. "Morris's supervisor, Scott Hendrickson, shared the investigation hearing transcript and Russell's recommendation with Andrea Smith, a member of BNSF's disciplinary committee. Smith recommended firing Morris, noting that his multiple violations during one run constituted a stand-alone dismissible violation under BNSF's Policy for Employee Performance Accountability." Dkt. No. 190 at 2.

2. "Although Morris also alleges that other decisionmakers (specifically Andrea Smith) may have been motivated by racial animus in firing him, the record contains no evidence that Smith or anyone else supervised the comparators." *Id.* at 7-8.

Morris misleads the Court by stating that, in its initial response to his Interrogatory No. 18, in which he asked BNSF to "Identify all individuals who had a role in terminating plaintiff," BNSF "only identified two individuals: Donald "Brett" Russell and Scott Hendrickson." This is false. BNSF also stated "BNSF's Labor Relations Department also independently reviewed the investigation hearing transcripts…" BNSF's current counsel, retained by BNSF in the weeks that followed the Court's summary judgment ruling, supplemented BNSF's answer to Interrogatory No. 18 and amended its 26(a)(1) disclosures in good faith, with the aim of ensuring Smith's identity as the member of "BNSF's Labor Relations Department" who "independently reviewed the investigation hearing transcripts" and recommended that Plaintiff be dismissed, facts that were already plainly known to Morris.

This Court has previously addressed the issue of admissibility of evidence from witnesses not identified in 26(a)(1) disclosures in this litigation, noting that it would consider four factors when determining if an unidentified witness should be excluded: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. Dkt. No. 190 at 3; *quoting David v. Caterpillar, Inc.,* 324 F.3d 851, 857 (7th Cir. 2003). When the identities of potential trial witnesses are well

known to the parties, the late disclosure of such witnesses is harmless. *See David,* 324 F.3d at 857-58 (testimony of undisclosed witness allowed when opposing party knew about the evidence for a significant period before trial); *Wells v. Berger, Newmark & Fenchel, P.C.*, No. CIV.A. 07 C 3061, 2008 WL 4365972, at *3 (N.D. Ill. Mar. 18, 2008) (no prejudice for failing to disclose a witness, where moving party was aware of witnesses prior to and throughout litigation); *Pryor v. City of Chicago*, No. 07 C 2479, 2010 WL 431470, at *8 (N.D. Ill. Feb. 1, 2010) (Party not obligated to supplement 26(a)(1) disclosures when information was "otherwise made known to the other parties during the discovery process.").

Plaintiff cannot claim that he is surprised that Smith will be called as a witness, or that by the Court permitting her to testify, he will be prejudiced. Through three years of litigation and a multitude of counsel, Plaintiff did not take a *single* deposition, including Smith's. He knew who she was, accused her of discriminating against him and contacted her directly, and yet he chose not to depose her. It would have been disingenuous for him to now claim that if only Smith's name had appeared on BNSF's initial 26(a)(1) disclosures, he would have deposed her – indeed, he does not assert he would have deposed her. Instead, he simply argues that "it would be fundamentally unfair" to allow Smith "to offer testimony that bears directly upon the central issue in this case – whether Plaintiff was terminated because of his race" without explaining why this is so or how he is prejudiced. He is not. He's known of Andrea Smith's involvement all along and the Court should permit her to testify because she offers important testimony that bears directly on the core issues of the case, a fact that Plaintiff readily admits. Dkt. No, 169 at 1; *see also Id.* at 12, 21. Barring Ms. Smith from testifying would severely prejudice BNSF, whereas allowing her testimony will supply critical evidence to the jury. Plaintiff's Motion *in Limine* No. 1 should be denied.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION *IN LIMINE* NO. 2**
**(Exclude testimony of Hannah Stadheim)**

Plaintiff seeks to exclude BNSF's Human Resources Director, Hannah Stadheim, from testifying at trial because Stadheim was not listed in BNSF's initial 26(a)(1) disclosures. Plaintiff also argues that Stadheim was not listed as an individual "who had a role in terminating plaintiff" in response to Plaintiff's interrogatories.

As BNSF makes clear in its Amended 26(a)(1) disclosures, Stadheim will *not* provide any testimony about Plaintiff's termination. She was not involved in his termination. Rather, she will simply testify "as to BNSF's policies regarding equal employment opportunity and its policies prohibiting discrimination, workforce demographics and BNSF's diversity efforts, as well as to whether Mr. Morris ever reported incidents of discrimination to Human Resources." The fact that BNSF maintains anti-discrimination and harassment policies is well-documented in this case. Once again, BNSF produced these policies in July 2016. Both BNSF and Plaintiff referenced and relied on the policies in their respective summary judgment filings. See BNSF Statement of Material Facts, Dkt. 151, ¶¶ 3-4 and Morris's Response to BNSF's Statement of Facts, Dkt. No. 171, ¶¶ 3-4. Indeed, Plaintiff conceded that BNSF maintains these policies, that he was well aware of them, and that they are relevant to his case. And he agrees these documents should be shown to the jury. See FPTO Joint Trial Ex. 5 (code of conduct), Joint Trial Ex. 7 (corporate EEO policy).

Again, the court considers four factors when determining if an unidentified witness should be excluded: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. Dkt. No. 190 at 3; *quoting David v. Caterpillar, Inc.,* 324 F.3d 851, 857 (7th Cir. 2003).

Plaintiff cannot claim to be surprised that BNSF intends to call a witness who will testify regarding the policies it produced nearly 3 years ago and upon which it relied in moving for summary judgment. Nor can Plaintiff claim he will be prejudiced by BNSF's failure to identify Stadheim as the trial witness to do so. Again, Plaintiff had ample opportunity to conduct depositions, including a 30(b)(6) deposition on these policy issues; he chose not to do so, or to conduct any other deposition, for that matter. There is no evidence that Plaintiff will be prejudiced, that BNSF engaged in bad faith in not disclosing Stadheim earlier, or that the trial will be disrupted by her testimony. Stadheim should be permitted to testify, and Plaintiff's Motion *in Limine* No. 2 should be denied.

### DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION *IN LIMINE* NO. 3
#### (Exclude testimony of Jason Jenkins)

Plaintiff seeks to exclude BNSF's General Manager, Jason Jenkins, from testifying at trial because Jenkins was not listed in BNSF's original 26(a)(1) disclosures. In its Supplemental 26(a)(1) disclosures, BNSF identified that Jenkins would testify about safety rules and procedures, federal regulations, discipline, alternative handling policies, and Plaintiff's request for review of his discipline. As with Andrea Smith, Plaintiff knew of Jenkins' involvement with his employment and termination.

In response to BNSF's Motion for Summary Judgment, Plaintiff noted that he "has complained to the Chicago Division General Manager Jason Jenkins about unfair discipline assessed by Scott Hendrickson." Dkt. No. 171, ¶3. During his deposition, Plaintiff was questioned at length about his interactions with Jenkins and his request that Jenkins review Plaintiff's disciplinary outcomes. Dkt.# 151-1, Pl. Depo. at 70:21 - 71:15; 150:21-152:1. In fact, before Plaintiff was terminated, Plaintiff wrote a letter to Jenkins, asking that Jenkins review previous attendance-related discipline. Dkt.# 151-1, Pl. Depo. at 218:9-219:21; Ex. A hereto,

M232-235 (Morris Depo. Ex. 32). And, most importantly, Jenkins was prominently involved in Plaintiff's termination. When Andrea Smith weighed in on Morris' termination, Jenkins was copied. Dkt.# 151-19, BNSF02286. As noted above, this document was produced by BNSF in July 2016. After Plaintiff was terminated, his union filed an appeal with Jenkins, who denied the appeal by letter and provided yet another thorough explanation as to why Plaintiff was terminated. Dkt.151-1, Pl. Depo. at 183:24 – 184:185:7; FPTO Def. Trial Ex. 32; Ex. B hereto, Plaintiff's Answers to Defendant's First Set of Interrogatories, No. 4. Notably, *Morris produced Jenkins' letter*. Morris also discussed the issue of alternative handling with Jenkins after his appeal was denied. Dkt.# 151-1, Morris Depo. at 168:12-22; Ex. B hereto, Plaintiff's Answers to Defendant's First Set of Interrogatories, No. 4.

Again, when the identities of potential trial witnesses are well known to the parties, the late disclosure of such witnesses is harmless. *See David,* 324 F.3d at 857-58 (testimony of undisclosed witness allowed when opposing party knew about the evidence for a significant period before trial); *Wells v. Berger, Newmark & Fenchel, P.C.*, No. CIV.A. 07 C 3061, 2008 WL 4365972, at *3 (N.D. Ill. Mar. 18, 2008) (no prejudice for failing to disclose a witness, where moving party was aware of witnesses prior to and throughout litigation); *Pryor v. City of Chicago*, No. 07 C 2479, 2010 WL 431470, at *8 (N.D. Ill. Feb. 1, 2010) (Party not obligated to supplement 26(a)(1) disclosures when information was "otherwise made known to the other parties during the discovery process.").

Like Andrea Smith, Jenkins is hardly a "surprise witness" in this case, nor will Plaintiff be prejudiced if Jenkins is permitted to testify. Jenkins has been a known quantity throughout the litigation. Plaintiff was certainly free to depose Jenkins based on his own knowledge of Jenkins' involvement and interactions with him. He can hardly claim now that he would be prejudiced if Jenkins were permitted to testify at trial on subject matter that parallels Plaintiff's

own testimony. Finally, contrary to Plaintiff's motion, BNSF does not intend to have Jenkins testify as an expert witness. Jenkins should be allowed to testify, and Plaintiff's Motion *in Limine* No. 3 should be denied.

### DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION *IN LIMINE* NO. 4
### (Limit testimony of Robert Della-Pietra)

Plaintiff's motion *in limine* to limit the testimony of Robert Della-Pietra is an amazing case of the pot calling the kettle black. On February 7, 2019, the day the parties filed their respective motions *in limine*, Plaintiff supplemented his Rule 26 disclosures, and even then, in a very cursory way. *For the first time in this case*, he provided via email brief descriptions of the testimony his witnesses are expected to offer at trial. Ex. C hereto. Plaintiff had never before provided *any* specific information about the scope or nature of expected testimony for any of the 77 individuals he initially identified in his earlier Rule 26(a)(1) disclosures. Dkt.# 217-6, pp. 1-3. Despite that, Plaintiff cries foul that BNSF slightly broadened the scope of Della-Pietra's testimony in its Supplemental 26(a)(1) disclosures. Applying Plaintiff's flawed standard, if Della-Pietra were restricted to the scope of the previous description of his trial testimony, then none of Plaintiff's witnesses should be permitted to testify, at all.

BNSF clarified the scope of Della-Pietra's testimony in BNSF's Supplemental 26(a)(1) Disclosures on January 23, 2019 to ensure that Plaintiff would be neither surprised nor prejudiced by the testimony of Della-Pietra, or its other witnesses. Indeed, Plaintiff specifically testified that Della-Pietra was Road Foreman of the Savanna territory and that he issued discipline to employees for "operating issues." Dkt.# 151-1, Pl's Depo. 97:2 – 98:17. Plaintiff specifically included the event that led to his termination as an "operating issue" for which Della-Pietra would be involved. *Id.* at 98: 9-17. So, Robert Della-Pietra will not only testify about Plaintiff's discipline, but also about how BNSF disciplined other employees for violations

of operating safety rules. This is consistent with his role as Chicago Division Road Foreman and Plaintiff's own knowledge of Della-Pietra's role. BNSF's supplemental disclosure is hardly a broad or sweeping change to the testimony description previously provided to Plaintiff, and of course, it is no surprise to Plaintiff. Plaintiff's Motion *In Limine* No. 4 should be denied.

### DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION *IN LIMINE* NO. 6
### (Limit Testimony Regarding Plaintiff's Mitigation)

Plaintiff states that BNSF "should not be able to pose questions about the adequacy of Plaintiff's job search efforts or delve into question about his tax returns in front of the jury," arguing that Plaintiff's back pay claims are not an issue for the jury. Ultimately, Defendant bears the burden of demonstrating that Plaintiff's claim for back pay should be limited by his failure to reasonably mitigate his damages. *Hutchison v. Amateur Elec. Supply, Inc.*, 42 F.3d 1037, 1044 (7th Cir. 1994).

Importantly, this is not a bifurcated trial. Neither party has requested bifurcation. All of the evidence, whether that evidence relates to issues decided by the jury or by the court, must come in during the trial. In his own Motion, Plaintiff's counsel makes clear that he intends to question Morris during trial about "the financial havoc caused by the loss of income resulting from his employment with Defendant being terminated." If Plaintiff expects the jury to consider his loss of income as relevant to his claim for emotional distress damages, then BNSF should certainly be able to introduce evidence showing that Plaintiff failed to reasonably search for alternative employment. Plaintiff cannot have it both ways, and BNSF must be permitted to question Plaintiff at trial regarding his failure to mitigate, as that evidence goes directly to Plaintiff's claims for damages. Plaintiff's Motion *in Limine* No. 6 should be denied.

### DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION *IN LIMINE* NO. 7
#### (Bar Testimony Referencing Other Lawsuits Filed by Plaintiff)

Plaintiff seeks to bar BNSF from making reference to other lawsuits filed by Plaintiff, including but not limited to *Morris v. Knutson*, Case No. 16 cv 2889, in which Plaintiff sued his union and its chairman alleging a breach of the union's duty of fair representation, arising from his termination from BNSF. Plaintiff claims that the litigation is "unrelated" to the current litigation and thus any reference to the *Knutson* case, or any other case filed by Plaintiff, would "result in a waste of time."

Generally, evidence of a plaintiff's prior or other litigation is inadmissible "if offered only to show his tendency to sue." *Gastineau v. Fleet Mortg. Corp.*, 137 F.3d 490, 496 (7th Cir. 1998). However, evidence of lawsuits that are "close in time and circumstances to the matter before the jury are relevant and admissible." *Thomas v. Sheahan*, 514 F. Supp. 2d 1083, 1091 (N.D. Ill. 2007). In this case, BNSF does not intend to introduce evidence of the *Knutson* case to show Plaintiff's tendency to sue, but rather to impeach Plaintiff regarding his pursuit of this other legal challenge arising from the same core incident as the instant case – his termination – and his statements in that case. For example, on March 7, 2016, Morris sent a letter to Judge Feinerman seeking to name his coworker, Jerome Jones, as a codefendant in the *Knutson* case, claiming that Jones "conspired with management to give false testimony against me to save his self [sic]." FPTO Def's Ex. 46. Certainly, Morris' own words about Jones, his coworker who was terminated for the same incident that gave rise to Morris' termination, are probative of the issues in the current case and his desire to cast blame on other individuals for his termination. Plaintiff's Motion *in Limine* No. 7 should be denied.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION *IN LIMINE* NO. 9**
(Bar Testimony Regarding Arbitration Proceeding)

Plaintiff seeks to bar BNSF from making any reference to the arbitration proceeding that followed Plaintiff's termination, claiming that "the arbitration proceeding did not address the issue of whether Plaintiff was terminated because of his race." Plaintiff's motion misses the mark.

Plaintiff certainly could have raised the issue of race discrimination in his arbitration, but he chose not to. He certainly *did* argue at the arbitration that his discipline was not appropriate in light of the policy violations that occurred. This is the same argument that Plaintiff will make at trial through comparator evidence – that he should not have been terminated based on the level of his offense. Most importantly, the independent arbitrator held that BNSF's Policy for Employee Performance Accountability ("PEPA") provides for a "stand alone dismissal" for "multiple serious violations in a single tour of duty." So, the arbitration panel found Plaintiff's termination was consistent with PEPA. That is precisely BNSF's defense here, and thus the arbitration panel's decision is relevant evidence of the absence of pretext. *See Rodgers v. White*, No. 08-3161, 2012 WL 2413725, at *2 (C.D. Ill. June 26, 2012) (admitting evidence of arbitrator's opinion and award in a Title VII case because the proceedings were relevant to issue of pretext and could be used for purposes of impeachment).

The evidence on the arbitration will also show the jury that Plaintiff was afforded the full measure of due process for his termination under his collective bargaining agreement. In short, Plaintiff's assertions that evidence related to the arbitration will "confuse the issues' or "cause a waste of time" are completely unfounded. His Motion *in Limine* No. 9 should be denied.

### DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION *IN LIMINE* NO. 10
### (Bar Introduction of Trial Exhibits Not Produced in Discovery

Plaintiff seeks to bar BNSF from using certain documents that were not produced until after discovery closed, specifically BNSF's Exhibits 1, 13, 14, 29, 33, 37, and 38.

After both Plaintiff and BNSF secured new counsel in October and November 2018, respectively, counsel conferred with each other in good faith to determine if any supplemental document production was required by either side in advance of trial. Indeed, on December 17, 2018, well after discovery closed in this case, Plaintiff's counsel produced supplemental documents to BNSF. Exhibit D hereto, Certificate of Service. Defendant, in turn, produced supplemental documents to the Plaintiff in January 2019, including the exhibits noted above. Plaintiff has not demonstrated that he is prejudiced in any way by BNSF's January 2019 document production, or that he would have pursued discovery in a different way had he been in possession of the documents prior to January 2019. *See Sec. & Exch. Comm'n v. Ferrone*, 163 F. Supp. 3d 549, 558 (N.D. Ill. 2016) (refusing to bar use of documents produced after the close of discovery at trial because moving party's "unsupported and undeveloped assertion of prejudice" was insufficient to bar use of documents). In fact, Plaintiff does not argue that he would be prejudiced by the introduction of these documents. He simply argues that the mere fact that the documents were not produced during discovery precludes their use.

After both parties secured new counsel, the attorneys worked collaboratively and in good faith to ensure that each side had any and all supplemental production with ample time to consider and review the documents prior to trial. Absent any other grounds for inadmissibility, both parties should be entitled to use the documents they produced as part of their recent supplemental document productions. Plaintiff's Motion *in Limine* No. 10 should be denied.

Dated: February 14, 2019                                     Respectfully submitted,


                                                             By**:** */s/Susan M. Troester*



Martin K. LaPointe (ARDC #6195827) Susan M. Troester (ARDC #6238264) LaPointe Law, P.C.
1200 Shermer Road, Suite 310
Northbrook, Illinois 60062
Telephone: 847-786-2500
Facsimile: 847-786-2650

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that she caused a copy of the foregoing **DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTIONS IN LIMINE** to be filed electronically with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record via email.

/s/ Susan M. Troester