IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RON MORRIS, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 15 C 2923 |
| BNSF RAILWAY, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Ron Morris prevailed at trial against his former employer BNSF Railway on his claim that he was terminated because of his race in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964. Morris has moved to recover attorney's fees and costs. In addition, his former attorney who represented him at an earlier stage of the case has moved to enforce an equitable lien. For the reasons set forth below, the Court grants both motions but modifies the amounts of the requested awards.

## Discussion

The Court assumes familiarity with this case's factual background and procedural history, which are summarized in the Court's previous written opinions. *See Morris v. BNSF Railway Co.* (*Ruling on Post-Trial Motions*), No. 15 C 2923, 2019 WL 3956231 (N.D. Ill. Aug. 22, 2019); *Morris v. BNSF Railway Co.* (*Summary Judgment Ruling*), No. 15 C 2923, 2018 WL 4742105 (N.D. Ill. Oct. 2, 2018). Having prevailed at trial, Morris now seeks an award of attorney's fees and expenses. His former attorney, Chiquita

Hall-Jackson, who represented Morris for about eight months in 2017 and 2018, has also filed a motion to recover a portion of Morris's award in connection with services she provided in his case.[1]

As a preliminary matter, the Court notes that contrary to the parties' repeated characterizations, Hall-Jackson cannot directly recover an attorney's fee or costs from BNSF; only Morris, the prevailing party in the litigation, may do so. *See Venegas v. Mitchell*, 495 U.S. 82, 87–88 (1990) (explaining that "it is the party, rather than the lawyer," eligible for a discretionary award of attorney's fees). As the Court will discuss, Hall-Jackson's equitable remedy is quantum meruit, which permits her to recover against Morris in particular. *See Elusta v. City of Chicago*, 696 F.3d 690, 694–95 (7th Cir. 2012). The Court will therefore consider the motion for attorney's fees and costs—including those incurred by Hall-Jackson—before determining what Hall-Jackson may recover from Morris.

**A.     Motion for attorney's fees and costs**

The prevailing party in an employment discrimination case under Title VII or section 1981 may recover "a reasonable attorney's fee." 42 U.S.C. § 2000e-5(k); 42 U.S.C. § 1988(b). "The award's size is a function of three numbers: the hours worked, the hourly rate, and any overall adjustments up or down." *Sommerfield v. City of Chicago*, 863 F.3d 645, 650 (7th Cir. 2017). The product of "the hours reasonably expended multiplied by the reasonable hourly rate" yields a "lodestar" amount. *Id.* "[A]

---

[1] More precisely, this motion was filed by Hall-Jackson's firm, Chiquita Hall-Jackson & Associates, P.C., rather than by the attorney in her individual capacity. But this distinction has no discernible bearing on the motion, so for ease of reference the Court will discuss the motion as if filed by Hall-Jackson individually.

2

plaintiff who achieves excellent results should receive the entire lodestar." *Id.*

Morris has moved to recover an attorney's fee of $123,525 for work performed by Garrett Browne and Edward Fox, the attorneys who represented him at trial. This figure is based on the hours Browne and Fox expended (totaling 268.75) at hourly rates of $450 and $500, respectively. Morris also seeks $3,106.58 in costs related to their representation. BNSF has not objected to the suggested lodestar calculation for Browne and Fox or to their requested costs. The Court deems the fee request reasonable in terms of both the number of hours worked and the attorneys' hourly rates, which accord with the rates they have been awarded in prior cases. *See* Fox Decl., Morris's Ex. B., dkt. no. 280–2, ¶ 10; Browne Decl., Morris's Ex. C, dkt. no. 280–3, ¶¶ 10, 12. No departure from the lodestar amount is called for in light of Morris's overwhelming success in this case. *See Sommerfield*, 863 F.3d at 650. The Court therefore awards Morris a total of $126,631.58 in fees and costs in connection with Fox and Browne's representation.

Morris also seeks fees and costs incurred by his previous attorney, Chiquita Hall-Jackson. Hall-Jackson represented Morris from about October 2017 to June 2018. Morris has moved to recover a fee totaling $54,945 for 226.3 hours of Hall-Jackson's work, in addition to $382.90 in costs. BNSF objects to about $20,000 of the total request. It does not contest Hall-Jackson's hourly rate of $275, but it cites particular categories of attorney time and expenses that it contends are not properly recoverable. The Court discusses each such category below.

1. **Administrative tasks and work performed by law student interns**

BNSF objects to $2,392.50 in fees for 8.7 hours that Hall-Jackson spent on

administrative tasks related to preparing exhibits to file with Morris's response to BNSF's summary judgment motion. Morris, citing *Pouncy v. City of Chicago*, No. 15 C 1840, 2017 WL 8205488 (N.D. Ill. Dec. 11, 2017), contends that it was appropriate for Hall-Jackson to perform those tasks because they were important to the case. *See id.* at *11 (holding that it was reasonable to have a paralegal, rather than a non-professional, perform certain important administrative tasks). But he does not explain why it is appropriate to bill for that work at her regular rate of $275 per hour, rather than at a paralegal rate that more accurately reflects the nature of the work performed. *See Gibson v. City of Chicago*, 873 F. Supp. 2d 975, 988–89 (N.D. Ill. 2012) (reducing an attorney's hourly rate because certain tasks "are more appropriately reimbursed at a paralegal rate").

BNSF also contends that Morris has not provided evidence to substantiate a rate of $137.50 per hour for work performed by a law student intern in Hall-Jackson's office who interviewed witnesses and conducted legal research. Morris provides no evidence, analysis, or authority supporting this billing rate. Instead, he contends that the obligation to provide evidence to demonstrate the appropriateness of a billing rate extends only to attorneys, not to paralegals. But this argument contradicts Supreme Court precedent. *See Missouri v. Jenkins*, 491 U.S. 274, 288 (1989) (holding, in the analogous fee-shifting context of 42 U.S.C. § 1988, that a paralegal's work is compensable at "the prevailing rates for such services").

The Court concludes that the time Hall-Jackson spent on administrative tasks and the hours logged by the law student intern are appropriately billed at a paralegal rate of $100 per hour. *See Blackwell v. Kalinowski*, No. 08 C 7257, 2012 WL 469962,

4

at *9 (N.D. Ill. Feb. 13, 2012); *Gibson*, 873 F. Supp. 2d at 989.  Applying that reduced rate to the time Hall-Jackson spent on administrative tasks and the hours worked by the law student intern, Morris is entitled to only $1,750 for work in this category, not the requested award of $3,602.50.

### 2. Block time entries

BNSF next argues that Morris cannot recover $12,375 in fees for time that Hall-Jackson "block-billed."  Specifically, BNSF objects to two billing entries.  One states that Hall-Jackson spent five hours exchanging e-mails with Morris regarding the scheduling of his deposition and deposition preparation sessions; the other reflects that Hall-Jackson expended about forty hours on phone calls with Morris throughout the course of the representation.  "Although 'block billing' does not provide the best possible description of attorneys' fees, it is not a prohibited practice." *Farfaras v. Citizens Bank & Tr. of Chi.*, 433 F.3d 558, 569 (7th Cir. 2006).  The Court must therefore determine whether to reduce the attorney's fee based on the reasonableness of the time claimed.

In assessing the reasonableness of these entries, the Court notes that it has had extensive dealings with Morris across an extended period while overseeing this case, during a good deal of which Morris was between lawyers and proceeding pro se.  Based on the Court's experience, it is reasonable to infer that Hall-Jackson needed to expend significant time—perhaps more than would be typical—communicating with Morris in order to effectively represent him.  This is particularly true given Morris's conflicts with both Hall-Jackson and his prior attorney, which caused both attorneys to eventually withdraw from their representation.

The Court concludes that a partial reduction of the requested fee award is

5

appropriate. Hall-Jackson has not explained why she needed to expend five hours exchanging e-mails with Morris just to schedule deposition-related meetings, and the Court concludes that this amount of time is excessive. The Court will therefore reduce these requested hours by half, resulting in an award of $687.50. In addition, Hall-Jackson's vague billing entry encompassing all of her phone conversations with Morris throughout the case does not permit the Court to readily determine the reasonableness of any particular entry. In light of this vagueness (but bearing in mind the particular challenges of representing Morris alluded to above), the Court will reduce the award for that entry by one-third, resulting in an award of $7,333.33 for this component of Hall-Jackson's time. *See Gibson*, 873 F. Supp. 2d at 986–87 (reducing the award for block-billed hours by half because of the difficulty in determining "whether the amount of time spent on each task is reasonable").

3. **Work outside of the representation**

BNSF next objects to work that Hall-Jackson performed that it contends was not done in support of Morris's claims. The Supreme Court has explained that to be recoverable, the time must have been "expended in pursuit of the ultimate result achieved." *Fox v. Vice*, 563 U.S. 826, 834 (2011). BNSF argues that the fee award should be reduced by $3,555 to account for time that Hall-Jackson billed for work that was adverse to Morris or that occurred after the conclusion of her representation.

Some of the time to which BNSF objects is recoverable. Specifically, Hall-Jackson opposed Morris's motion to strike the response to the motion for summary judgment that Hall-Jackson filed. Although Hall-Jackson was adverse to Morris in that instance—indeed, eventually this conflict at least partially precipitated her withdrawal

6

from the case—her successful opposition to Morris's motion was undertaken so that the Court would consider the already-filed brief in response to the motion for summary judgment. As a result, Morris withstood summary judgment on the strength of Hall-Jackson's brief, and Hall-Jackson's fees for time spent opposing the motion to strike are therefore appropriately recoverable.

To the extent that Morris seeks to recover fees for the time that Hall-Jackson spent on her motion to enforce an equitable lien, this time is not related to her representation of Morris in the relevant sense. Similarly, Hall-Jackson has not explained why it was necessary with respect to the prosecution of this case for her to spend time reviewing the Court's summary judgment ruling, which was issued a substantial time after her withdrawal from representation. The Court therefore reduces the requested fee award by $2,637.50 to exclude this time.

4. **Objections to costs**

Finally, BNSF objects to particular categories of Hall-Jackson's claimed costs. Most of her requested costs relate to her motion to enforce an equitable lien. Just as Hall-Jackson's time spent litigating that motion is not compensable, the corresponding costs are not appropriately taxed. BNSF also objects to $100 in expenses for copying documents throughout the entirety of the case, arguing that Hall-Jackson has not adequately itemized and explained the copying costs. But the $100 is a sufficiently small expenditure to make BNSF's insistence on a more detailed breakdown unreasonable. *See Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 643 (7th Cir. 1991) (noting that the prevailing party "was not required to submit a bill of costs containing a description so detailed as to make it impossible

economically to recover photocopying costs").  The Court will therefore award Morris $100 in copying costs but otherwise deny the motion for costs with respect to Hall-Jackson.

B.     **Hall-Jackson's motion**

Having determined the amounts of fees and costs to which Morris is entitled, the Court turns to the question of what, if anything, Hall-Jackson is entitled to recover from Morris.  Hall-Jackson contends that she has a lien on the judgment awarded to Morris in the amount of 33.3% of the total award—the contingency fee to which she and Morris originally agreed.  But she does not have a statutory lien under the Illinois Attorney Lien Act because she did not serve him with notice of the lien during their attorney-client relationship.  *See In re Chicago Flood Litig.*, 289 Ill. App. 3d 937, 943, 682 N.E.2d 421, 426 (1997).  Nor does Hall-Jackson have an equitable lien based on the contingency fee agreement.  "[U]nder Illinois law, a client has the right to terminate her attorney at any time.  When this occurs in a contingent fee agreement setting, the agreement becomes void, and the contingency term is no longer enforceable."  *In re Estate of Kelso*, 2018 IL App (3d) 170161, ¶ 16, 121 N.E.3d 504, 508 (citation omitted).  Hall-Jackson is therefore entitled to recover only under a theory of quantum meruit for the services rendered on Morris's behalf.  *See id.*; *see also Dobbs v. DePuy Orthopedics, Inc.*, 842 F.3d 1045, 1049 (7th Cir. 2016) ("A discharged attorney is left to recover compensation for services rendered under a theory of *quantum meruit* only.").

Morris argues that Hall-Jackson has forfeited any arguments in support of a quantum meruit theory by failing to raise them in her motion to enforce an equitable lien.  Although Hall-Jackson's motion does not discuss quantum meruit, instead focusing on

8

her claim to the 33.3% contingency fee, Morris later filed a motion to recover Hall-Jackson's attorney fees from BNSF. It would incongruous to hold that Hall-Jackson may not recover the same fees and costs that Morris (through his current attorneys) argued were necessarily incurred to litigate his case. The Court therefore will consider Hall-Jackson's motion to enforce the equitable lien, taken together with Morris's attorney's fee petition, as a motion asserting a claim of quantum meruit.

In considering what Hall-Jackson may recover under a quantum meruit theory, the Court "must examine the attorney['s] work to decide what a reasonable fee would be." *Dobbs*, 842 F.3d at 1049. For practical purposes, therefore, Hall-Jackson's entitlement to a reasonable fee is co-extensive with the attorney's fee awarded to Morris based on Hall-Jackson's work in his case. Morris appears to concede as much in his response to Hall-Jackson's motion. *See* Morris's Resp. Br., dkt. no. 269, at 9 (arguing that the Hall-Jackson's contributions to the fee petition helped establish her reasonable fee, which is "essentially the equivalent of a *quantum meruit* recovery"). The Court therefore concludes that Hall-Jackson is entitled to recover from Morris the full amount of fees and costs that the Court has awarded him for her work in the case.

## Conclusion

For the foregoing reasons, the Court grants plaintiff Ron Morris's petition for attorney's fees and costs [dkt. nos. 246, 280] subject to the limitations set forth in this opinion. The Court awards Morris a total of $173,215.31, which comprises $126,631.58 in fees and costs incurred by attorneys Edward Fox and Garrett Browne and $46,583.73 for fees and costs incurred by attorney Chiquita Hall-Jackson. The Court also grants the motion by non-party Chiquita Hall-Jackson & Associates, PC, which is styled as a

"motion to enforce an equitable lien" but which the Court construes as a petition for attorney's fees based on quantum meruit. The Court holds that Chiquita Hall-Jackson & Associates, PC is entitled to recover $46,583.73 from Morris.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: September 13, 2019